IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARICRUZ HERRERA LOPEZ, JOSE )
LUIS ABAD ALFONSO, LILIANA RIVERA )
JACUINDE, AMALIA GIRON CINTO, )
PAULA GALINDO SAN PEDRO, )
MARTA EUSEBIO HERNANDEZ, and )
MARIA MORALES YANEZ, )
                                      )
       Plaintiffs, )      Case No. _____
                                      )
vs. )
                                       )
TAMMY WALKER d/b/a AMERICAN )
MADE APPAREL, )
                                      )
      Defendant. )

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR U-VISA CERTIFICATION**

---

       Plaintiffs, Maricruz Herrera Lopez, Jose Luis Abad Alfonso, Liliana Rivera Jacuinde, Amalia Giron Cinto, Paula Galindo San Pedro, Marta Eusebio Hernandez, and Maria Morales Yanez, by and through their counsel, Ben H. Houston II, respectfully request that the Court certify that each of the aforementioned Plaintiffs "have been helpful, are being helpful, or will likely be helpful" in the investigation or prosecution of the Defendant's violations of 18 U.S.C. § 1584 (Involuntary Servitude). In particular, each of the aforementioned Plaintiffs, who are undocumented residents, have offered a preliminary showing that they are qualified for U Nonimmigrant Visas in that they are victims of involuntary servitude and trafficking with respect to involuntary servitude; they have suffered substantial physical and mental abuse as a result of the Defendant's crimes; they possess information about the Defendant's involvement in the crime of involuntary servitude; and they have been helpful, are being helpful, or are likely to be

helpful in the investigation or prosecution of the Defendant's crimes. Additionally, this Court has the authority to certify that the moving Plaintiffs are assisting the investigation of the Defendants' crimes.

I.  **Facts and Procedural History**

The Plaintiffs seeking U-Visa certification are each undocumented residents of this Judicial District. [Doc. 1, ¶¶ 7-13]. They filed the instant lawsuit on May 3, 2018. [Doc. 1] The Defendant, Tammy Walker, was served with process on May 19, 2018. [Doc. 6] The Defendant, Tammy Walker, failed to file an answer or otherwise defend the lawsuit as required by law within twenty-one (21) days of being served with a copy of the lawsuit, and accordingly the Plaintiffs filed a Request for Default pursuant to Fed. R. Civ. P. 55(a) on June 14, 2018. [Doc. 7]. The Clerk entered a default in favor of the Plaintiff's pursuant to Fed. R. Civ. P. 55(a) on July 6, 2018. [Doc. 8]. The Plaintiffs are filing a Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b) contemporaneously with the filing of this motion. Each of the Plaintiffs in this case are victims of forced labor and trafficking with respect to forced labor within the meaning of the Victims of Trafficking Protection Act for the reasons set forth with particularity below.

Each of the Plaintiffs were employed as manual laborers by the Plaintiff within the past few months at the American Made Apparel plant located in Jacksboro, Campbell County, Tennessee. [Doc. 1 ¶ 16] These Plaintiffs worked in working conditions that were horrendous. [Doc. 1, ¶ 18; see also ¶ 5 of the Affidavits in Support of U-Visa Certification attached to the motion accompanying this Memorandum of Law as Exhibits 2 through 8] In particular, these Plaintiffs were often without access to running water and basic sanitary items like toilet paper. Despite extreme temperatures in the factory during the summer and winter months, there was no

heat or air conditioning at the factory. The garbage often piled up resulting in an extreme cockroach and rodent problem at the factory. Workers were also often not permitted to use the restroom, and were told that they would need to buy diapers if they needed to go to the bathroom during their breaks. The Defendant also told her employees that in addition to their other manual labor duties; they were required to clean the bathrooms themselves because she didn't want to pay someone else to do it. The Defendant threatened to close down the bathrooms if the employees didn't clean them themselves. Because there was often no running water with which to clean the bathrooms, the Plaintiffs often had to use collected rain water, which they used to clean the bathroom. Finally, the Defendant kept all of the doors to the factory including the emergency exits locked on both the inside and the outside except for the front door, which created a significant fire hazard. [Doc. 1, ¶ 18; see also ¶ 5 of the Affidavits in Support of U-Visa Certification attached to the motion accompanying this Memorandum of Law as Exhibits 2 through 8]

In recent months, Walker has failed to pay her employees for work performed, and she owes unpaid wages to each of the aforementioned Plaintiffs in this case. [Doc. 1, ¶ 20; see also ¶ 6 of each of the Affidavits in Support of U-Visa Certification attached to the motion accompanying this Memorandum of Law as Exhibits 2 through 8]. In order to keep the aforementioned Plaintiffs from leaving their positions despite her failure to pay them for work performed, Walker has threatened each of the Plaintiffs with serious harm or physical restraint and also with abuse or threatened abuse of law or the legal process. [Doc. 1, ¶ 21] In particular, Walker has told each of the Plaintiffs in this case at various times that if they quit their jobs and found a new employer she would call Immigration Customs and Enforcement on the Plaintiffs' new employer. As a result of these threats, the Plaintiffs stayed employed longer with the

Defendant than they otherwise would have despite her failure to pay them their overdue wages. [Doc. 1, ¶ 22; see also ¶ 8 of each of the Affidavits in Support of U-Visa Certification attached to the motion accompanying this Memorandum of Law as Exhibits 2 through 8].

Walker has told all of the Plaintiffs except Jose Luis Abad Alfonso at various times that she would pay them all the wages that she owed them on Friday if they would come into work, but that if they elected to quit their position she would not pay them anything despite owing them thousands of dollars in unpaid wages. As a result of these threats, the Plaintiffs stayed employed longer with the Defendant than they otherwise would have despite her failure to pay them their overdue wages. [Doc. 1, ¶ 23; see also ¶ 8 of each of the Affidavits in Support of U-Visa Certification attached to the motion accompanying this Memorandum of Law as Exhibits 2 through 8]. With regard to Jose Luis Abad Alfonso, Walker told him that she would pay him all that he owed him immediately on Friday if he came into work for the week, but that if he didn't come into work, she wouldn't pay him his past due wages until twenty-one (21) days had elapsed even though historically the employees had always been paid on a weekly basis. As a result of this threat by Walker, Mr. Alfonso continued to work for Ms. Walker for a longer period of time than he otherwise would have despite her failure to pay him his overdue wages. Additionally, when Mr. Alfonso went to recover his long overdue pay checks after twenty-one days had elapsed, Walker not only refused to pay him but she also told him to "enjoy your job while you can because I am going to call immigration on you." Upon information and belief, this threat was made not only for the purpose of harassing Mr. Alfonso, but the threat was also intended to strike fear in the minds of her remaining employees. [Doc. 1, ¶ 25; see also ¶ 8 of Affidavit of Jose Luis Abad Alfonso attached hereto]. The Defendant, threatened Plaintiffs Paola Galindo

San Pedro and Marta Eusebio Hernandez that if they quit their job due to not being paid, she would use the money she owed them to hire new workers to replace them. [Doc. 1, ¶ 24]

Walker induced Paula Galindo San Pedro to come back and work for her after she had quit due to nonpayment of wages by falsely promising Ms. San Pedro that she would pay her everything she owed her if she came back to work for her. This false inducement was made just a couple of days prior to a raid conducted by Immigration Customs and Enforcement at the American Made Apparel Factory on February 14, 2018. Plaintiffs, Paula Galindo San Pedro, Maricruz Herrera Lopez, and Maria Morales Yanez were each detained as a result of the ICE raid, but they were released on bond pending further deportation proceedings. Upon information and belief, the Defendant called Immigration, Customs, and Enforcement on the Plaintiffs and other undocumented workers at her factory in order to avoid having to pay these workers the long overdue wages that she owed them. [Doc. 1, ¶ 28; see also ¶ 8 of Affidavit of Paula Galindo San Pedro attached hereto]

Walker owes Plaintiff, Maricruz Herrera Lopez, unpaid wages of at least seven thousand seven hundred and thirteen dollars ($ 7,713.00). [Doc. 1, ¶ 31; See also ¶ 6 of Affidavit of Maricruz Herrera Lopez attached hereto] Walker owes Plaintiff, Jose Luis Abad Alfonso, unpaid wages of at least one-thousand six hundred and twenty-six dollars and eighty-eight cents ($, 1,626.88). [Doc. 1, ¶ 32; See also ¶ 6 of Affidavit of Jose Luis Abad Alfonso attached hereto] Walker owes Plaintiff, Liliana Rivera Jacuinde, unpaid wages of at least two thousand nine-hundred and eighty-one dollars and twenty-five cents ($ 2,981.25). ). [Doc. 1, ¶ 33; See also ¶ 6 of Affidavit of Liliana Rivera Jacuinde attached hereto] Walker owes Plaintiff, Amalia Giron Cinto, unpaid wages of at least one-thousand seven hundred and fifty-five dollars ($ 1,755.00). [Doc. 1, ¶ 34; See also ¶ 6 of Affidavit of Amalia Giron Cinto attached hereto]

Walker owes Plaintiff, Paula Galindo San Pedro, unpaid wages of at least two thousand five hundred and eighty-three dollars ($ 2,583.00). [Doc. 1, ¶ 35; See also ¶ 6 of Affidavit of Paula Galindo San Pedro attached hereto]  Walker owes Plaintiff, Marta Eusebio Hernandez, unpaid wages of at least two-thousand and sixty-seven dollars ($ 2,067.00). [Doc. 1, ¶ 36; See also ¶ 6 of Affidavit of Marta Eusebio Hernandez attached hereto]  Finally, Walker owes Plaintiff, Maria Morales Yanez, unpaid wages of at least two thousand two hundred and sixty-three ($ 2,263.00). [Doc. 1, ¶ 37; See also ¶ 6 of Affidavit of Maria Morales Yanez attached hereto]  In addition to these unpaid wages, each of the Plaintiffs have each suffered substantial pain, suffering, mental anguish, physical abuse, and mental abuse as a result of the actions of the Defendant, including the Defendant's use of threats and coercion to compel them into continuing to work in atrocious conditions for weeks or months without pay.  [See ¶ 10 of each of the Plaintiffs' Affidavit in support of U-Visa Certification]

       The Plaintiffs have been cooperative and helpful in the present civil litigation, which involves allegations of violations of criminal statutes.  Additionally, if this case is referred for criminal prosecution, the Plaintiffs fully intend to be helpful to the authorities in the prosecution of the crimes alleged to have been committed by the Defendant.  [See ¶ 11 of each of the Plaintiffs' Affidavit in support of U-Visa Certification; see also Letter to FBI dated June 19, 2018 attached hereto as Exhibit # 1 to the Plaintiffs' Motion for U-Visa Certification]  Proposed certifications for each of the Plaintiffs are attached to the Plaintiff's Motion for U-Visa Certification as Exhibits nine (9) through fifteen (15).

**II.    This Court Should Certify Plaintiffs' Application for U-Visa Relief**

    **A.    The Moving Plaintiffs Offer a Preliminary Showing that they are Qualified for U Nonimmigrant Visas.**

Congress created the U visa nonimmigrant classification with the passage of the Victims

of Trafficking and Violence Prevention Act of 2000 ("TVPA").  See Pub. L. No. 106-386, § 1513, 114 Stat. 1464, 1533-37; see also 72 FR 53014-15.  "The purpose of the U nonimmigrant classification is to strengthen the ability of law enforcement agencies to investigate and prosecute such crimes as . . . trafficking in persons, while offering protection to alien crime victims in keeping with the humanitarian interests of the United States."  72 FR 53014 (summary of U.S. Citizenship and Immigration Services comments on interim U visa regulations).  To be eligible for U visa relief, an alien (1) must have "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" enumerated by the Act; (2) must "possess [] information" concerning the qualifying criminal activity; and must have "been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of the qualifying criminal act.  See 8 U.S.C. § 1101(a)(15)(U)(i).  One of the qualifying criminal acts is involuntary servitude, as well as "any similar activity in violation of federal, tate, or local criminal law."  See 8 U.S.C. § 1101(a)(15)(U)(iii).

      **1.**  **The Moving Plaintiffs are Victims of Involuntary Servitude**

  Petitioners for U non-immigration status must be a "victim" of one of the enumerated offenses.  See 8 U.S.C. § 1101(a)(15)(U)(iii)(1).  U.S. Department of Homeland Security ("DHS") regulations define a "victim of qualifying criminal activity" as "an alien who has suffered direct or proximate harm as a result of the commission of qualifying criminal activity."  8 C.F.R. § 214(a)(14).  The moving Plaintiffs are direct victims of involuntary servitude and the similar crimes of forced labor and trafficking with respect peonage, slavery, involuntary servitude, or forced labor.

Any person who "knowingly and willfully holds to involuntary servitude" another has violated federal criminal law.  See 18 U.S.C. § 1584; 19 U.S.C. § 1589.  Congress has defined involuntary servitude as

> A condition of servitude induced by means of –
> (A) any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such condition, that person or another person would suffer serious harm or physical restraint; or
> (B) the abuse or threatened abuse of the legal process.

At the core of the moving Plaintiffs' involuntary servitude claims are the Defendant's illegal and pervasive threats issued to the moving Plaintiffs of what she would do in the event that the Plaintiffs stopped working for want of wage payment.  Based on these threats, the moving Plaintiffs felt they had no choice but to continue to toil for the Defendant in atrocious conditions without getting paid the wages they were due.

In the case of Garcia v. Audubon Communities Management, LLC, the employer of undocumented workers made threats similar to the threats made by the Defendant in the case at bar by among other things threatening that the undocumented workers would be deported if they quit their positions.  See Garcia v. Audubon Communities Management, LLC, No. 08-01291, 2008 WL 1774584, at 2* (E.D. La. April 15, 2008).  The Federal Court for the Eastern District for Louisiana in that case ruled that threats of deportation to force continued labor were sufficient to establish involuntary servitude within the meaning of the Victims of Trafficking Protection Act, 18 U.S.C. § 1581 *et. seq.*  Id.  Thus, it is clear based on the facts set forth above as well as applicable case law that the Plaintiffs have made a prima facie showing that they are victims of involuntary servitude within the meaning of the Victims of Trafficking Protection Act.

## 2. The Moving Plaintiffs Suffered Substantial Physical and Mental Abuse as a Result of the Defendants' Crimes.

To be eligible for U Visa relief, an alien must have "suffered substantial physical or mental abuse as a result of having been a victim of criminal activity" enumerated by the Act. See 8 U.S.C. § 1101(a)(15)(U)(iii)(1). To determine whether the suffered abuse is substantial, a number of factors may be considered, including:

> The nature of the injury inflicted or suffered; the severity of the perpetrator's conduct; the severity of the harm suffered; the duration of the infliction of the harm; and the extent to which there is permanent or serious harm to the appearance, health, or physical or mental soundness of the victim. . . . A series of acts taken together may be considered substantial physical or mental abuse even where no single act alone rises to that level.

8 C.R.R. § 214.14(b).

Ultimately, eligibility for U Visa relief must be made on "case-by-case determinations, using [these] factors as guidelines. . . . Through these factors, USCIS will be able to evaluate the kind and degree of harm suffered by the individual applicant, based upon the individual applicant's experience." 72 FR 53018.

In the case at bar, each of the moving Plaintiffs suffered substantial physical and mental abuse as a result of working for the Plaintiff under the threat of deportation should they quit their employment despite not being paid. [See ¶ 10 of each of the Affidavits of the Plaintiffs in support of Motion for U-Visa certification] In particular, each of the Plaintiffs were coerced to continue working in deplorable conditions without being paid the wages that were due to them. [See ¶¶ 5 & 10 of each of the Affidavits of the Plaintiffs in support of Motion for U-Visa certification] The Plaintiffs were often without access to running water and basic sanitary items like toilet paper. Despite extreme temperatures in the factory during the summer and winter months, there was no heat or air conditioning at the factory. The garbage often piled up resulting

in an extreme cockroach and rodent problem at the factory. The Plaintiffs were also often not permitted to use the restroom, and we were told that they we would need to buy diapers if they needed to go to the bathroom during their breaks  The Defendant also told the Plaintiffs that in addition to our other manual labor duties; they were required to clean the bathrooms themselves because she didn't want to pay someone else to do it. The Defendant threatened to close down the bathrooms if the Plaintiffs didn't clean them themselves. Because there was often no running water with which to clean the bathrooms, the Plaintiffs often had to use collected rain water, which we used to clean the bathroom. The Defendant kept all of the doors to the factory including the emergency exits locked on both the inside and the outside except for the front door, which created a significant fire hazard for the Plaintiffs. [See ¶¶ 5 & 10 of each of the Affidavits of the Plaintiffs in support of Motion for U-Visa certification]  Finally, the Defendant in this case induced Paula Galindo San Pedro to come back and work for her after she had quit due to nonpayment of wages by falsely promising Ms. San Pedro that she would pay her everything she owed her if she came back to work for her. This false inducement was made just a couple of days prior to a raid conducted by Immigration Customs and Enforcement at the American Made Apparel Factory on February 14, 2018. Plaintiffs, Paula Galindo San Pedro, Maricruz Herrera Lopez, and Maria Morales Yanez were each detained as a result of the ICE raid, but they were released on bond pending further deportation proceedings. [Doc. 1; ¶ 30]

      Because of the pervasive nature of the Defendant's abuses and the significant trauma suffered by the moving Plaintiffs, they can each show that they have suffered substantial physical and mental abuse, thereby making them eligible for U visa relief.

### 3. The Moving Plaintiffs Possess Information about about the Defendant's involvement in the crime of involuntary servitude.

To receive U visa relief, an alien must "posses [] information" concerning the alleged criminal activity. See 8 U.S.C. § 1101(a)(15)(U)(i)(II); see also 8 C.F.R. § 214.14(b)(2)(the petitioner must have "knowledge of the details" and "possess specific facts" sufficient to show that the petitioner "has, is or is likely" to assist the prosecution of the crimes.) As set forth in the moving Plaintiffs' supporting declarations, the moving Plaintiffs have intimate and detailed knowledge of the Defendant's crimes.

### 4. The Moving Plaintiffs Have Been Helpful, are Being Helpful, or are Likely to be Helful in the Investigation or Proesecution of Defendants' Crimes."

The final requirement for U visa relief is that the petitioner "has been helpful, is being helpful, or likely to be helpful" to the law enforcement agency or judge investigating or procsecuting the crime. See 8 U.S.C. § 1101(a)(15)(i). In the instant case, the Plaintiffs have filed the instant lawsuit alleging that the Defendant committed the crime of involuntary servitude. See 18 U.S.C. § 1590 (incorporating 18 U.S.C. § 1584) and the substantively identical crime of forced labor, see 18 U.S.C. § 1589, for which a private right of action was extended by 18 U.S.C. § 1595. The Plaintiffs' civil action under the TVPA requires that these claims satisfy the elements of, and be litigated under the applicable criminal statutes. 18 U.S.C. § 1595(a). As such, the moving Plaintiffs' proceed in this civil action under the criminal statutes qualifying for U Visa relief. 8 U.S.C. § 1101(a)(15)(U)(iii). The moving Plaintiffs' bringing of this lawsuit, which is a private prosecution of these crimes, is manifestly being "helpful" to the Court's investigation of the Defendants' criminal activity. Additionally, the Plaintiffs through their attorney have brought this conduct to the attention of the Federal Bureau of Investigation as evidenced by Exhibit # 1 of the underlying motion.

### B.   This Court may Certify that the Moving Plaintiffs are Assisting the Investigation of the Defendants' Crimes.

As set forth above, an alien applying for U nonimmigrant status must provide a certification from a law enforcement official or judge that the alien "has been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of the underlying crime. See 8 U.S.C. § 1184(p)(1).  Recognizing that judges technically "neither investigate crimes nor prosecute perpetrators," U.S. Citizenship and Immigration Services ("USCIS") suggests that "the term 'investigation or prosecution' should be interpreted broadly."  72 FR 53020

In the instant case, this Court is the appropriate certifying authority.  Because the instant lawsuit is venued before this Court, this Court bears the responsibility to investigate and prosecute – under the broad definition set forth in the USCIS guidelines – the alleged involuntary servitude crimes.

The allegations of criminal activity in the complaint filed in this matter include forced labor within the meaning of the Trafficking of Victims Protection Act, and the allegations of criminal activity in the complaint filed in this matter also include trafficking with respect to forced labor.  Thus, pursuant to 8 U.S.C. § 1101(a)(15)(U), this Court has the authority to certify a U Visa on behalf of the Plaintiffs.  See Villegas v. Metropolitan Governmnent of Nashville, 907 F. Supp. 907, 910-915 (recognizing that federal judges are qualified to "certify" U-Visa applications in civil cases like this one where qualifying criminal activity is shown); see also Garcia v. Audubon Communities Management, LLC, No. 08-01291, 2008 WL 1774584, at 2* (E.D. La. April 15, 2008)(examining the complaint and exhibits attached to the U Visa certification the court recognized its authority to grant a motion for U Visa certification in an FLSA action where at that point in the proceedings plaintiffs had made a *prima facie* showing of qualifying criminal activity).

U.S. Customs and Immigration Services regulations direct the certifying official to complete and sign Form I-918, Supplement B, " U Nonimmigrant Status Certification." See 8 C.F.R. 214.14(c)(2)(i). Proposed completed Form I-918 Supplement B certification forms corresponding to each of the seven moving Plaintiffs have been attached hereto as Plaintiffs' Exhibits nine (9) through fifteen (15). U.S.C.I.S. instructions regarding this form have been attached to this motion as Plaintiffs' Exhibit sixteen (16).

**III.  Conclusion**

Thus, for all of the foregoing reasons set forth hereinabove, the Plaintiffs' request this Court to grant their request for U-Visa Certification.

Respectfully submitted, this the 6th day of July, 2018.

/s/ Ben H. Houston II
Ben H. Houston II, BPR # 023695
Attorney for Petitioner
717 N. Central Street
Knoxville, TN 37917
(865) 546-0011
(865) 546-0038 (fax)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing *Memorandum of Law in Support of Motion for U-Visa Certification* has been served upon the Defendant, Tammy Walker, via U.S. Mail, postage prepaid at her residence of 221 Fairway Drive, LaFollette, Tennessee 37766 this the 6th day of July, 2018.

/s/ Ben H. Houston II
Ben H. Houston II